# DUDLEY *v.* OWEN.

### CONTRACTS.

1. Where a contract is made in anticipation of certain legislation, and such legislation, when enacted, comes within the spirit of the contract, if not within its letter, the legislation is within the contract.
2. When an attorney for the Cherokee Indians associated a firm of attorneys with him in the prosecution of claims of the Indians against the government, the contract between the attorneys was construed, and *held*, in view of legislation existing at the time it was made, to be an agreement on his part to pay them $10,000 out of his fees, unless he should be compelled to collect his fees under existing legislation, in which event they were to look out for themselves; and as thereafter the court of claims, under the authority of an act of Congress, passed after the making of the contract, allowed the attorney his fees in full, it was *held* that the members of the firm were entitled to recover from him the fee agreed to be paid them.

No. 1821.   Submitted February 18, 1908.   Decided April 7, 1908.

HEARING on an appeal by the plaintiffs from a judgment of the Supreme Court of the District of Columbia, on an agreed statement of facts, in an action on a contract for the payment of fees.                                        *Reversed.*

The COURT in the opinion stated the facts as follows:

Appellants William W. Dudley and Louis T. Michener as plaintiffs below, sued to recover the sum of $10,000 and interest. By stipulation of counsel, the case was heard before the court without a jury, agreeably to the provisions of secs. 70 and 71 of the Code. The following facts were found to have been proven:

"On May 28, 1902, the plaintiffs and the defendant entered into the following contract:
    Vol. XXXI.—12.

"This memorandum of agreement witnesseth that John Vaile,. Esquire, of Fort Smith, Arkansas, having been employed by the Eastern Cherokee Council of the Cherokee Nation, Indian territory, under contract of February and April, 1900,. and ratified a third time by act of council of September 4th,. 1901;

"And whereas, the said John Vaile has employed the services of Robert L. Owen, of Muscoga, Indian territory, under his aforesaid contracts:

"Now therefore the premises considered, the said Owen hereby contracts and agrees to convey to W. W. Dudley and L. T. Michener, partners, of the firm of Dudley & Michener, the sum of ten thousand dollars ($10,000), out of the fees so pledged to the said Owen, immediately upon the collection, or in the exact proportion as the said fees may be collected, it being understood and agreed that this contract is conditioned upon the collection of the fees aforesaid. And in the contingency of the said fees not being provided for by legislation, as per the contract of the Eastern Cherokee Council aforesaid, but upon proof of services, then and in that event each of the parties hereto shall prove service independently of the other, and said Owen shall not be expected, out of fees. collected for his personal service, to pay the fee to said Dudley & Michener; but it is understood and agreed that he will in such a contingency do what he can to assist Dudley & Michener to. collect the fee hereby contracted by them.

"The said Dudley & Michener, on their part, agree to give their co-operation in the collection of the money due the Eastern Cherokees, and to assist the said Owen as associate counsel in this case.

"Witness our hands and seals in duplicate on this 28th day of May, 1902.

Robert L. Owen. (Seal.)<br>Dudley & Michener. (Seal.)

"Thereafter the plaintiffs, on their part, gave to the defendant their co-operation, assistance, and services in the prose-

cution and collection of the claim referred to in said contract, as said contract provided they should do.

"On March 20, 1905, the court of claims rendered a judgment in the case of the Eastern Cherokees against the United States. On April 17, 1905, the defendant, Owen, addressed the following letter to the plaintiffs:

"The Southern,
              "St. Louis, April 17, 1905.

"Dudley & Michener,
        Washington, D. C.
"Gentlemen:—

"I expect to be at Riggs house about April 28th, 1905, and wish by that time you would make up a careful affidavit of services rendered in case under contract of May 28/02, as I am preparing decree and wish to protect your fee.

Yours truly,
                    R. L. Owen.

"A few days thereafter, the plaintiff, Michener, met the defendant, and was told by him that he had abandoned the purpose to make application for fees at that time, and would postpone said application until after the Supreme Court of the United States, to which the said case was to be appealed, had acted thereon; and the application was so postponed by the defendant Owen. The judgment of the court of claims was affirmed by the Supreme Court, with a slight modification. After the return of the mandate of the Supreme Court to the court of claims, the defendant, Owen, who was one of the attorneys of record in the case in the court of claims, together with his coattorney of record, R. V. Belt, made an application to the court of claims for the allowance of 15 per cent of the judgment to them as their fee. By agreement between the said Owen and Belt and certain of their associate attorneys, other than the plaintiffs, and without notice from defendant to the plaintiffs, the court apportioned the fee

of 15 per cent among said Owen and Belt and those associate attorneys, in accordance with their several contracts.

Under the rules of the court of claims, the attorneys of record had absolute control of the distribution of the fee allowed by the court, and the court, not recognizing any associate counsel, save as directed by the attorneys of record, the plaintiffs could not, under the rules of the court, have claimed any fee except by permission of the said attorneys of record.

"Under said decree, the defendant, Owen, was allowed and was paid the full amount of fees contemplated to be received by him according to the terms of the said contract between him and Dudley & Michener.

"The plaintiffs were not parties to the said agreement between Owen and Belt, as attorneys of record, and said associate counsel, and had no further notice from Owen that any application was to be made to the court to apportion fees to any counsel except attorneys of record; nor were they ever further notified by the defendant to prepare and render proof of their services after the interview between the plaintiff Michener and the defendant, in April, 1905.

"The defendant has never paid to the plaintiffs any sum on account of the said contract between him and the plaintiffs."

Thereupon plaintiffs requested the court to render a judgment in their favor, which the court declined to do, but, on the contrary, found for the defendant, Robert L. Owen.

*Mr. Samuel A. Putman* and *Mr. Charles Poe* for the appellants.

*Mr. William H. Robeson* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

Did the court err in its interpretation of this contract?—is the question here presented.

When the contract forming the basis of this action was signed (May 28, 1902), it was evidently in the minds of the

parties that the provisions of secs. 2103 to 2106, both inclusive, of the Revised Statutes of the United States, would, in the absence of further legislation, govern the payment of Mr. Owen's fees under the John Vaile contract. In sec. 2104 it is provided that no money shall be paid to any person for services to any Indian, Indians, or Indian tribe, under any contract or agreement, "until such person shall have first filed with the Commissioner of Indian Affairs a sworn statement, showing each particular act of service under the contract, giving date and fact in detail; and the Secretary of the Interior and Commissioner of Indian Affairs shall determine therefrom, whether, in their judgment, such contract or agreement has been complied with or fulfilled; if so, the same may be paid, and, if not, it shall be paid in proportion to the services rendered under the contract."

By sec. 68 of the act of Congress of July 1, 1902 (32 Stat. at L. 726, chap. 1375), Congress conferred jurisdiction upon the court of claims to hear and determine any claim, which the Cherokee tribe, or any band thereof, arising under treaty stipulation, might have against the United States. The section further provided that any suit brought under the act should "be through attorneys employed and *to be compensated in the manner prescribed in secs. 2103 to 2106, both inclusive, of the Revised Statutes of the United States.*" If further evidence were necessary to convince us that the contract between the parties herein was made with reference to the provisions of the Revised Statutes above referred to, it is to be found in the provisions in the act of March 3, 1903 (32 Stat. at L. 996, chap. 994), specifically fixing the status of "the Eastern Cherokees, so called, including those in the Cherokee Nation," etc., as a band or bands for all purposes of said sec. 68 of said act of July 1, 1902, and ordaining "that the prosecution of such suit on the part of the Eastern Cherokees shall be through attorneys employed by their proper authorities, their compensation for expenses and services rendered in relation to such claim to be fixed by the court of claims upon the termination of such suit."

If these various provisions are kept in mind, the interpretation of the contract becomes much easier, since they tend to explain its ambiguities and shed light on what originally was in the minds of the parties. Mr. Owen's contract contemplated that he should receive 15 per cent of the amount collected. The court finds that the full amount was allowed him. Appellants were to receive $10,000 out of the fees so pledged to said Owen, or a proportionate amount if Owen failed to collect the entire amount of his fee. Thus far the contract is free from ambiguity. Owen's sucess measured appellants' success, and his failure meant their failure. Now comes the provision that, "in the contingency of said fees (Owen's) not being provided for by legislation, * * * but upon proof of services," each party shall look our for himself; Owen, however, "in such a contingency, to do what he can to assist" appellants to collect their fee. What was meant by this provision? Unless additional legislation could be secured, Owen feared he might be compelled to file with the Commissioner of Indian Affairs "a sworn statement, showing each particular act of service" under his contract, "giving date and fact in detail," and that he might then be compelled to convince the Secretary of the Interior and the Commissioner of Indian Affairs that the whole of the large amount claimed by him should be paid. It was but natural that he should have stipulated that, in such a contingency, he would not pay appellants "out of the fees collected for his *personal* service," that is, out of the fees allowed him under his sworn itemized detailed statement to the Commissioner of Indian Affairs. Said sec. 68 of said act of July 1, 1902, confirmed the fear entertained by Owen at the time the contract with appellants was entered into, since that act specifically made applicable the above provision of the Revised Statutes. But said act of March 3, 1903, contained the legislation contemplated by Owen's contract with appellants. Under that act, instead of being compelled to show "each particular act of service" under his contract, he could go before a court and receive compensation upon a much more liberal basis. Instead of being paid by the day, he would be paid by results,—the measure of his success for his

clients would proportionally be the measure of his fee.    Surely
it was never contemplated by either Owen or appellants that
Congress would directly fix the fee Owen was to receive.    All
that in reason could have been contemplated was that legislation
might be enacted similar to that which was enacted.    If the
legislation under which he received his fee did not come within
the letter of the contract, it certainly came within its spirit, and
hence was within the contract.

The letter of April 17, 1905, from Owen to appellants, if con-
sidered in connection with what followed, adds cogency to the
above views.    When he wrote the letter, Owen evidently thought
it might be well to be prepared to supplement his statements as
to services rendered by the affidavit of appellants.    Within a
few days, however, he met one of appellants, and informed him
that he (Owen) would postpone making application for fees
until a later date.

We next find him and his coattorney of record, Belt, before
the court of claims where, "by agreement between the said Owen
and Belt and certain of their associate attorneys, other than the
plaintiffs, the court apportioned the fee of 15 per cent among
said Owen and Belt *and those associate attorneys, in accordance
with their several contracts."*    Unless we are to impute bad faith
to Mr. Owen, we must find that, after writing appellants, he
concluded it would not be necessary for them to make any affi-
davit for his use before the court of claims; hence his failure to
notify them.    That his judgment was correct is evidenced by
the allowance of his whole fee of 15 per cent.    That appellants
so interpreted the contract is manifest, as otherwise they would
not have rested in supposed security while their fee was being
frittered away.    The affidavit mentioned in Owen's letter was
not the affidavit required by the Revised Statutes, but simply an
affidavit for Owen's use, which, as we have said, he subsequently
determined it was not necessary to have.

Appellants have rendered Owen the services they agreed to
render, and he has reaped the benefit.    He was to pay them out
of his fees unless he should be compelled to collect his fees under
existing law.    The legislation hoped for and contemplated by the

contract was enacted, and, upon the allowance of Owen's fees, we think it was incumbent upon him to pay appellants.

The judgment must be reversed, with costs, and the case remanded with directions to enter a judgment for the plaintiffs for $10,000 with interest from July 14, 1906, the date of the inception of this action.                              *Reversed.*

A writ of error to the Supreme Court of the United States, prayed for by the appellant, was allowed April 14, 1908.