### McCLURG v. CRAWFORD.

(Circuit Court of Appeals, Eighth Circuit. November 8, 1913.)

No. 3,919.

1. FRAUDS, STATUTE OF (§ 118*)—CONTRACT FOR SALE OF REAL ESTATE—CORRESPONDENCE.

A contract for the sale of real property, valid under the statute of frauds, may be made by correspondence. It is not necessary that every paper should contain all the necessary elements of the contract which may be authenticated and established through the medium of letters and separate writings and documents, provided they refer to each other and to the same persons and things and manifestly relate to the same contract and transaction.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 199, 262–265; Dec. Dig. § 118.*]

2. FRAUDS, STATUTE OF (§ 113*)—CONTRACTS FOR SALE OF LAND—REQUISITES AND SUFFICIENCY OF WRITING.

In the absence of a special provision in a contract for the sale of real estate respecting the payment of the purchase price, the law presumes that it is to be paid in cash at the close of the transaction or within a reasonable time when demanded by the seller, and the absence of such provision does not render the contract invalid under the statute of frauds.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 239–241; Dec. Dig. § 113.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** SPECIFIC PERFORMANCE (§ 66*)—CONTRACTS FOR SALE OF REAL PROPERTY—
EQUITY JURISDICTION.

The vendor in a contract for the sale of real property has the right to
come into a court of equity to enforce specific performance.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 197;
Dec. Dig. § 66.*

Persons entitled to enforce specific performance, see note to Lawyer v.
Post, 47 C. C. A. 493.]

Appeal from the District Court of the United States for the District
of Colorado; Robert E. Lewis, Judge.

Suit in equity by Ogden D. McClurg against Thomas B. Crawford.
Decree for defendant, and complainant appeals. Reversed.

Pierpont Fuller, of Denver, Colo. (Henry T. Rogers, Daniel B.
Ellis, Lewis B. Johnson, and George A. H. Fraser, all of Denver, Colo.,
on the brief), for appellant.

John T. Barnett, of Denver, Colo., for appellee.

Before HOOK and CARLAND, Circuit Judges, and VAN VAL-
KENBURGH, District Judge.

VAN VALKENBURGH, District Judge. April 30, 1912, appellant
filed his bill of complaint against appellee praying a decree of specific
performance of an alleged contract for the purchase from appellant
of 45.075 acres of mining land known as the Jay Eye See group of
claims in Ouray county, Colo. Appellant, complainant below, alleged
complete performance on his part, tendered a deed to the land, and
demanded judgment for the purchase price of $10,000. An amend-
ment to the bill, filed June 29, 1912, set forth the contract as embodied
in correspondence filed as exhibits and lettered from "A" to "Y," in-
clusive. To the bill, as thus amended, the defendant interposed a de-
murrer, the material specifications of which are the following:

"(3) That said amended bill shows that no contract for the purchase and
sale of the property described therein ever existed between the plaintiff and
defendant, and that if any ever did exist, or was ever entered into, between
the parties, it is so vague, uncertain, and ambiguous as not to be capable of
specific execution through a decree of court.

"(4) Said amended bill fails to allege the time of performance of said al-
leged contract.

"(5) Said bill upon its face shows that the complainant has a complete and
adequate remedy at law."

The demurrer was sustained, and the bill dismissed; and from this
action of the trial court complainant prosecutes this appeal.

That part of the correspondence disclosing the contract declared
upon may be said to consist of Exhibits A to I, inclusive, which are as
follows:

Exhibit A.

"November 25th, 09.

"Messrs. York & Rathnell, Ouray, Colorado—Gentlemen: Your name is
given us by the Hon. John T. Barnett, Attorney General.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Our client, Mr. Ogden T. McClurg, is the owner of the following described lode mining claims, situate in your county, namely:

|  |  |  |  |
|---|---|---|---|
| Kremlin | Lode | — | No. 2,570. |
| Stanley | " | — | No. 2,571. |
| SW 14' Mono | " | — | No. 2,213. |
| Jay Eye See | " |  |  |
| Contact | " |  |  |
| Carbonate | " |  |  |
| Sunnyside | " |  |  |
| Ajax | " | — | No. 2,632. |

"Mr. McClurg is very anxious to dispose of this property and if you think that you can handle the same for him, we should be glad to have you inform us on what terms you would be willing to do so.

"Your prompt reply would be appreciated.

"Yours very truly,                                  Rogers, Ellis & Johnson."
"JHS—H"

### Exhibit B.

"Denver, Colorado, November 29, 1909.

"Messrs. Rogers, Ellis & Johnson, Denver, Colorado—Gentlemen: Your letter of the 25th to Messrs. York & Rathnell has been turned over to me and I wish you would advise me as to the least amount that Mr. Ogden T. McClurg would accept for his Jay Eye See group in the Red Mountain District. Also advise me as to whether an arrangement could be made with him for surface rights on the Carbonate Lode of this group. I own the Indiana Group at the top of the mountain and if I could make proper arrangements I would be tempted to drive a tunnel from near the railroad to cut the Indiana vein.

"Very truly yours,                                  Thos. B. Crawford."

### Exhibit C.                                  "Dec. 7th, 09.

"Thos. B. Crawford, Esq., Century Bldg., City—Dear Sir: Property of Mr. Ogden T. McClurg. Pardon delay in replying to yours of the 20th ult. Same has been caused by pressure of important matters needing immediate attention.

"We hardly know what to say in response to your inquiry as neither we nor our client are sufficiently informed to fix a price which under all the circumstances the property should reasonably bring. Two or three years ago, when Mr. McClurg was approached upon the subject, he intimated that he would be willing to accept $25,000, but we have no doubt that if the property is not, by reason of lack of development or for other reasons, in condition to justify such a high valuation, he will be glad to consider an offer of a lower sum.

"We should be very glad indeed if you would make us a proposition and upon receiving same, we will promptly submit it to Mr. McClurg, and if the amount you offer does not seem entirely below reason, we have no doubt that he will give the same his careful attention.

"Yours very truly,                                  Rogers, Ellis & Johnson."
"JHS—H"

### Exhibit D.

"Denver, Colorado, December 8, 1909.

"Rogers, Ellis & Johnson, Denver, Colorado—Gentlemen: Your letter of the 7th just received. You might offer for me to Mr. McClurg $10,000.00 for the claims at Red Mountain. There is absolutely nothing there at this time to justify even that price, but as I wrote you in my former letter it is my purpose, if I can properly arrange matters, to drive a tunnel from the foot of the mountain cutting through the property owned by Mr. McClurg and two claims (laying) beyond him and between my property and his.

"Nothing can be done up there until about May 1st in any event, but I would like to conclude the negotiations and know where I stand, because if I do not succeed in getting the properties I will abandon the idea of driving the tunnel.

"Very truly yours,                                  Thos. B. Crawford."

Exhibit E.                              "Dec. 9th, 09.

"Thos. B. Crawford, Esq., 307 Century Bldg., City—Dear Sir: Ogden T. McClurg Property. We acknowledge receipt of your favor of the 8th inst., and note that in your behalf we may offer Mr. McClurg $10,000 for the claims 'at Red Mountain.'

"In order that there may be no mistake as to what claims you refer to, we beg to ask whether, in writing your letter you had in mind the 'Kremlin' and 'Stanley' lodes, or the 'Jay Eye See' Group of claims. Presumably you referred to the former, but we would like to have a definite expression from you upon the subject and upon receipt of same will promptly advise Mr. McClurg of your offer.

"Yours very truly,                     Rogers, Ellis & Johnson."
"JHS—H"

Exhibit F.

"Denver, Colorado, December 11, 1909.

"Messrs. Roger, Ellis & Johnson, Denver, Colorado—Gentlemen: Yours of the 9th with reference to the Ogden T. McClurg property received. I meant the Jay Eye See group of claims at the foot of the mountain. However, if Mr. McClurg is wise he will be like the Kansas homesteader who was deeding his property and discovered that the man to whom he was deeding it could not read. Instead of deeding him eighty acres as agreed, he put in the whole 160 acres, so I think it would be money in Mr. McClurg's pocket to deed all of it.

"Very truly yours,                     Thos. B. Crawford."

Exhibit G.

"Dec. 21, 1909.

"Mr. Thomas B. Crawford, 317 Century Bldg., City—Dear Sir: Ogden T. McClurg Property. We are just in receipt of a letter from Mr. Ogden T. McClurg, authorizing us, in his behalf, to accept the offer contained in your favors of the 8th and 11th inst., to purchase the 'Jay Eye See' group of claims, Ouray county, Colorado, for $10,000; and, we, therefore, for Mr. McClurg, do hereby accept your said offer, understanding, of course, that the sum named is to be paid in cash.

"Kindly call up Mr. Rogers by telephone upon receipt of this letter, and inform him what day and hour will meet your convenience for the closing of the transaction, and oblige,

"Yours very truly,                     Rogers, Ellis & Johnson."
"JHS—H"

Exhibit H.

"December 22, 1909.

"Rogers, Ellis & Johnson, Denver, Colorado—Gentlemen: Yours of the 21st received and I will call you up just as quick as I hear from my friend in Ouray. I have written him this morning and should hear in the next four or five days.

"Very truly yours,                     Thos. B. Crawford."

Exhibit I.

"January 7, 1910.

"Rogers, Ellis & Johnson, City—Gentlemen: I have just heard from my friend in Ouray and also from my friend in New York to whom I had written concerning the funds needed to take up the J. I. C. deed, and I am glad to report that I have made the arrangement, and in the course of the next few weeks will be able to deposit the money to your credit.

"I will keep you advised in the course of a couple of weeks as to just when we want the deed deposited and whether we want it deposited here or sent to New York City.

"I am also securing some other property in the same neighborhood, and the whole matter will come through at the same time. My friend advises me definitely and beyond question and assures me that I can make you this definite promise.

"Very truly yours,                     Thos. B. Crawford."

[1] We think these letters make a complete, binding, and enforceable written contract for the sale of the real estate. The laws of Colorado relating to the sale of realty provide:

"Every contract for the leasing for a longer period than one year, or for the sale of any lands or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the lease or sale is to be made.

"Every instrument required to be subscribed by any party under the last preceding section, may be subscribed by the agent of such party, lawfully authorized by writing." Rev. St. of Colorado, 1908, §§ 2662, 2663.

Messrs. Rogers, Ellis & Johnson, whose names are subscribed to the letters addressed to Messrs. York & Rathnell, and to the defendant, are alleged to be the duly authorized agents of complainant. The contract, which the parties have made, may be gathered from letters which have passed in correspondence between them. It is not necessary that every paper should contain all the necessary elements of the contract, which may be authenticated and established through the medium of letters and separate writings and documents provided they refer to each other and to the same persons and things, and manifestly relate to the same contract and transaction. Beckwith v. Talbot, 2 Colo. 639; s. c., 95 U. S. 289, 24 L. Ed. 496; Crystal Palace Flouring Co. v. Butterfield, 15 Colo. App. 246, 61 Pac. 479; Brown on Statute of Frauds, § 346b; Wood on Statute of Frauds, § 345, p. 645. It is held that the recitals of the contract should disclose the following essentials: (1) The names of the parties, vendor and vendee; (2) the terms and conditions of the contract; (3) the interest or property affected; (4) the consideration to be paid therefor. It is apparent that all these elements clearly appear in the quoted correspondence embodying the contract. The letters are neither vague, uncertain, nor ambiguous.

[2] In the absence of special provision respecting the payment of the purchase price, the law presumes that it is to be paid in cash at the close of the transaction; that is to say, within any reasonable time when demanded by the seller. The remaining letters filed as exhibits need not be considered here; they consist, in the main, of repeated insistence on the part of appellant that the transaction be closed by the payment of the purchase price, and repeated plausible explanations and excuses for delay on the part of appellee. Nothing in them can be construed as tendering or accepting any material modification of or departure from the previously completed contract. Additional time was repeatedly requested by appellee, and granted by appellant. Having invited, for his own accommodation, the delay which resulted, appellee cannot evoke therefrom the defense of laches amounting to waiver.

[3] The contention that the bill will not lie, because it shows upon its face that complainant has a complete and adequate remedy at law, cannot be sustained. The vendor had a right to come into a court of equity to enforce specific performance. Cathcart v. Robinson, 5 Pet. 264–278, 8 L. Ed. 120; Raymond v. San Gabriel Land & Water Co. (C. C. A.) 53 Fed. 883–885, 4 C. C. A. 89; Nelson v. Husted et al. (C. C.) 182 Fed. 921.

Our conclusion is that the trial court erred in sustaining the demurrer to the bill. The decree must be reversed, and the cause remanded, with directions that the demurrer be overruled, and that further proceedings be taken in accordance with the views herein expressed.