## NO–LEAK–O PISTON RING CO. v. CHANDLEE.

(Court of Appeals of District of Columbia.    Submitted January 5, 1923.    Decided April 3, 1923.)

No. 3829.

1. **Patents ⬤➡183—Tender ⬤➡12(3)—Tender of lump sum payable under contract in installment held sufficient, as provision for installment was one which could be waived.**

Where a contract for the conveyance of a patent required the consideration to be paid in weekly installments, but required no interest on the deferred payments, the provision for installment payments was one for the benefit of the assignee, which it could waive, so that a tender of the consideration in a lump sum was sufficient.

2. **Specific performance ⬤➡92(1)—Failure to tender at time not fatal, unless time is of the essence.**

Where time for making payments for the conveyance of a patent was not of the essence of the contract, failure to pay or tender payment at the exact time fixed by the contract will not defeat specific performance.

3. **Patents ⬤➡183—Assignee's information to Patent Office to protect patent held not to defeat right to conveyance.**

Where a party having a contract for the conveyance of a patent when it should be issued received information that the patent sought was too broad to be valid, his transmission of such information to the Patent Office to protect the validity of the patent did not defeat his rights under the contract.

4. **Abatement and revival. ⬤➡9, 15—Suit by corporate officer held not to defeat suit by corporation, the parties being different, and the suit being subsequently dismissed.**

Where, after the making of an oral contract for conveyance of a patent to an officer of a corporation, a written contract was made to convey the same patent to the corporation, a suit by the officer, based on the oral contract, which was dismissed after the written contract, which had been mislaid, was found and suit instituted thereon by the corporation, did not defeat the corporation's right to specific performance of the contract, since the officer had a right to dismiss his suit, and, even if he had not done so, he and the corporation were different legal entities.

5. **Contracts ⬤➡169—Circumstances cannot be considered in construing, unless ambiguity exists.**

Circumstances surrounding the execution of a contract cannot be considered in construing it, where the contract is in writing and is clear and definite in its terms.

6. **Patents ⬤➡183—Failure of assignee to pay expenses in Patent Office held not to defeat right to conveyance.**

Where a contract for the conveyance of a patent after it should be issued required the assignee to pay the expenses of interference proceedings, but not other expenses, and provided that expenses which he might pay should be deducted from the purchase price, the assignee's failure to pay certain Patent Office expenses did not defeat his right to specific performance of the contract on tender of the full purchase price specified in the contract.

7. **Specific performance ⬤➡32(3)—Contract is mutual, though vendor would have remedy at law.**

A contract for the conveyance of a patent right is mutual, so as to entitle the purchaser to specific performance, even though the seller would have had an adequate remedy at law, if the purchaser had failed to perform, under the exception to the general rule that equity will decline jurisdiction for a money demand which could be recovered by an action at

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

law, which gives the vendor the right to compel the vendee to perform his contract by paying the purchase money, if the purchaser had a right to compel the execution and delivery of a conveyance.

**8. Specific performance ⊙⟹71—Contract for conveyance of patent is enforceable.**

A contract for the conveyance of a patent for an invention will be specifically enforced, where necessary to secure to the assignee the value of the patent purchased.

**9. Specific performance ⊙⟹71—Sale of patent enforced, if remedy at law is inadequate.**

Specific performance of a contract relating to personalty may be enforced in chancery, unless the plaintiff has a plain, speedy, and adequate remedy at law, and the remedy at law is inadequate for breach of contract to convey a patent, in view of the impossibility of ascertaining in advance the damages resulting from the breach.

**10. Specific performance ⊙⟹10(1)—Vendor who has conveyed patent to another, reserving royalties, can be required to transfer interest in royalties.**

In a suit for specific performance of a contract to convey a patent right when issued, where it appeared that the vendor had subsequently transferred the patent right to another, reserving royalties to himself, the vendor can be compelled to convey his interest in the royalties, if the assignment to the other was valid as against the purchaser.

Appeal from the Supreme Court of the District of Columbia.

Suit for specific performance by the No-Leak-O Piston Ring Company against George H. Chandlee. Decree for defendant, and plaintiff appeals. Reversed, with directions to enter a decree for plaintiff.

S. C. Peelle, C. F. R. Ogilby, and Edwin F. Samuels, all of Washington, D. C., for appellant.

D. P. Wolhaupter, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. This is a suit for specific performance of a contract made by George H. Chandlee with the Automobile Accessories Company (herein called the Accessories Company), a corporation, of which one Norwood was president and chief stockholder, owning 95 per cent. of the shares. Before the institution of the suit the corporation changed its name to No-Leak-O Piston Ring Company, the appellant. For brevity we refer to it as the Ring Company. Chandlee died after answering, and the suit was revived in the name of Edward Irvin Burns, as executor of his will.

Chandlee was a member of the firm of Chandlee & Chandlee, patent attorneys, and an inventor. Norwood was also an inventor in the same field. In 1913 Chandlee filed an application for a patent relating to a piston ring. In 1914 he, as attorney for Norwood, a position which he had held for more than 20 years, filed an application for a patent which also related to a piston ring. Norwood's application became involved in an interference with one Rittenhouse. In pursuance of an oral understanding with Norwood, Chandlee, on July 16, 1915, filed another application, which disclosed, in addition to the subject-matter of his earlier one, certain other details included in the claims comprising the issue of the interference. The oral agreement just

referred to, modified as to consideration, was reduced to writing on July 20, 1915, and became the contract between Chandlee and the Accessories Company, the one in suit. The contract recited that Chandlee, as party of the first part, had filed the application of July 16; that the Accessories Company, party of the second part, desired to secure all rights in said application and letters patent thereon to issue, and added:

"That the party of the second part shall pay all expenses that may arise in any interference proceedings in which the said application may become involved. That the party of the first part shall conduct the interference proceedings; upon the issue of the letters patent, the party of the second part shall pay unto the party of the first part the sum of one thousand dollars, after having deducted from such sum the full amount paid by him [it] to the party of the first part covering the expenses of any interference proceedings referred to; and the balance after such deduction shall be paid by the party of the second part to the party of the first part in weekly installments of ten dollars, * * * and when the party of the second part shall have paid unto the party of the first part the full and complete balance referred to, said application and letters patent to issue shall become the full property of the party of the second part. * * *"

And Chandlee further agreed that upon the fulfillment of the terms of the contract by the party of the second part he would—

"execute any and all such further instruments that the party of the second part may deem necessary to convey unto the party of the second part the full right, title, and interest in and to said letters patent."

During the argument at the bar it was admitted that the contract was drawn by Chandlee as attorney for Norwood, who as president of the appellant company assisted Chandlee in obtaining a favorable decision in the interference proceeding. Some time before the patent emerged Norwood was informed that Chandlee was endeavoring to procure a patent that would be too broad, in view of the prior art. He thereupon brought the matter to the attention of the Patent Office, for he feared that, if the patent was issued in accordance with Chandlee's desire, it would be invalid. His suggestion was not followed by the Patent Office. It turned out that the patent, when issued, was not as broad as Norwood thought it would be. His misapprehension, he alleges, was due to the fact that the records of the Patent Office were not open to him, and that he had to rely upon information derived from another source.

The patent was issued to Chandlee on November 30, 1920. It recites that it was issued on the application filed July 16, 1915, which was, it says, a continuation of the application filed May 10, 1913. The Ring Company paid to Chandlee all the expenses of the interference referred to in the contract. After the issuance of the patent, it, through its attorney, presented to Chandlee a copy of the contract, the patent, an assignment of the latter, and $1,000 in money, and demanded an assignment of the patent in accordance with the terms of the contract. Chandlee refused to accede to the demand, without giving any reasons for his action.

Soon thereafter Norwood commenced, in his own name, a suit against Chandlee on the oral agreement already referred to. His reason for doing this is alleged to be that he had mislaid the written

contract. Later, having found it, the Ring Company instituted this suit on February 4, 1921, and on February 16, same year, Norwood dismissed his suit. While the last-mentioned suit was pending, Chandlee transferred the patent and all his interest therein to McQuay-Norris Manufacturing Company (which we designate as the Manufacturing Company), by two papers, one denominated "Assignment" and the other "Memorandum of Agreement," each executed January 29, 1921. By the Memorandum of Agreement the Manufacturing Company is obligated to pay to him from time to time certain royalties named therein. The Manufacturing Company is not a party to the suit.

The Ring Company in its bill tendered itself ready and willing to make full payment in accordance with the contract, and asked that the defendant be required to convey to it his entire right, title, and interest in the patent, and for other relief. At the trial the defendant did not deny the sufficiency of the tender, but does so here. The learned trial justice dismissed the bill, but reserved to the plaintiff the right to proceed at law.

[1, 2] We think the tender was sufficient. The Accessories Company offered to do everything which the contract required it to do, and continues to keep its offer good. While the contract obligated the Accessories Company to pay in weekly installments, unless otherwise agreed, no interest was to be paid on the deferred payments. The provision was for the benefit of the Accessories Company, and it could waive it, as it did, by tendering at once the whole sum due. Time was not made the essence of the contract, and, where this is so, failure to pay or tender payment at the exact time fixed in the contract will not defeat specific performance. Meaux v. Helm, Sneed Ky. Dec. 252, 2 Am. Dec. 716, 718; Hall v. Delaplaine, 5 Wis. 206, 68 Am. Dec. 57. Compare Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818. There is nothing in Jenkins v. Locke, 3 App. D. C. 485, 491, in conflict with this view. In that case the court sustained a demurrer to the bill, and its action was affirmed by this court. The bill failed to allege that the vendee had "tendered the purchase money, and notes for deferred portions thereof," as required by the contract, and consequently no foundation was laid for specific performance.

[3, 4] Chandlee complains that Norwood abandoned an application of his filed March 4, 1918. Just what relation this has to the matter in controversy we are not able to perceive. Nor was Norwood's action in bringing to the attention of the Patent Office the information which he had received, to the effect that Chandlee was endeavoring to procure a patent that would be too broad in view of the prior art, detrimental to the rights of the Ring Company under the contract. He sought thereby to so guide the Patent Office that it would not issue a patent on the 1915 application which would be void. Thereby he was seeking to preserve the Ring Company's rights rather than to destroy them. Moreover, he did not pretend to speak for the Ring Company. He acted in his own name. Neither is there any merit in the suggestion that he sacrificed some of the Ring Company's rights by commencing the suit based on the oral agreement between himself and Chandlee. He dismissed that suit, as he had the right to do. Even if he had not

289 F.—34

done so, it would not be fatal to the suit by the Ring Company. He and the company are different legal entities.

[5] We are asked to consider the circumstances which surrounded the execution of the contract, for the purpose of determining its meaning. But this is not necessary. Canons of construction are not resorted to save where ambiguity exists. There is none here. The contract is in writing, and is clear and definite in its terms. It declares that, as soon as the money consideration provided for therein has been paid, the patent issued on the application of July 16, 1915, shall become the property of the Accessories Company, and that Chandlee will execute all such further instruments as may be necessary to convey unto the company "the full right, title, and interest in and to said letters patent." What could be plainer?

[6] The contention that because, as claimed, Norwood stood by and saw Chandlee amend the application of July 16, 1915, and prosecute it to fruition without offering to pay any part of the expense, the Accessories Company is barred from asserting any right under the contract, does not impress us. It was the duty of Chandlee to prosecute the application as stated. Norwood says he paid all the expenses of the interference. But however that may be, neither he nor the Accessories Company ever refused to pay anything demanded of him or it. The company was not obligated by the contract to liquidate expenses of which it knew nothing. Moreover, the contract authorized the company to deduct any expenses advanced by it from the consideration named in the contract. No claim is made that the expenses exceeded the sum of the consideration. As we have seen, the Accessories Company tendered that sum, and consequently did all it could do to discharge any obligation resting on it with respect to the expenses of the interference. Nor is there any basis in the record for the assertion that the Accessories Company had abandoned the contract.

[7, 8] The contract does not lack mutuality, although Chandlee would have an adequate remedy at law against the Accessories Company if it had failed to perform. Circuit Judge Caldwell, speaking for the United States Circuit Court of Appeals, Eighth Circuit, in Raymond v. San Gabriel Val. Land & Water Co., 53 Fed. 883, 4 C. C. A. 89, said that, whenever the purchaser has the right to go into equity and compel the execution and delivery of a deed, the principle of mutuality gives the vendor the right to go into equity to compel the vendee to perform the contract on his part by paying the purchase money. This is an exception to the general rule that equity will decline jurisdiction of a suit for a money demand which could be recovered by an action at law. The exception is based on the established doctrine of equity that the right to a specific performance must be mutual, and that it must be enjoyed alike by both parties to every contract to which the jurisdiction extends. In support of this doctrine the learned judge cited Pom. Spec. Perf. of Cont. §§ 6, 165; Cathcart v. Robinson, 5 Pet. 264, 278, 8 L. Ed. 120; Old Colony Railroad Co. v. Evans, 6 Gray (Mass.) 25, 31, 66 Am. Dec. 394; Hopper v. Hopper, 16 N. J. Eq. 147, and other authorities. The Raymond Case is approved in Nelson v. Husted (C. C.) 182 Fed. 921, 925; Donahoe v. Franks (D. C.) 199 Fed. 262, 267, and McClurg v. Crawford, 209

Fed. 340, 344, 126 C. C. A. 266. There is an exception to this exception (Roller v. Weigle, 49 App. D. C. 102, 261 Fed. 250), but it does not apply here. A contract for the conveyance of a patent will be enforced where necessary to secure to the assignee the value of the patent purchased. Fairchild v. Dement et al. (C. C.) 164 Fed. 200; Corbin v. Tracy et al., 34 Conn. 325.

[9] It has long been settled that a specific performance of a contract relating to personalty may be enforced in chancery unless the plaintiff has a plain, speedy, adequate, and complete remedy at law. Mechanics' Bank v. Seton, 1 Pet. 299, 7 L. Ed. 152. See, also, Express Co. v. Railroad Co., 99 U. S. 191, 25 L. Ed. 319; American Smelt. & R. Co. v. Bunker Hill & S. Min. & C. Co. (D. C.) 248 Fed. 172, 182, and cases cited. An action at law would not furnish the Ring Company with a complete and adequate remedy: It would be very difficult for it to establish the damages resulting from the breach of the contract. No one could tell in advance whether the patent would be productive of small or large returns.

[10] For the purposes of this case we have assumed, without deciding, that by the Assignment to the Manufacturing Company of January 29, 1921, Chandlee put it out of his power to transfer the patent, but under that assignment he is entitled to royalties for the use of the patent. Where the defendant has made himself unable to perform the whole contract he may be compelled to convey whatever interest he has left therein. Jasper v. Wilson, 14 N. M. 482, 492, 94 Pac. 951, 23 L. R. A. (N. S.) 982; Note, L. R. A. 1917F, 597; Spengler v. Sonnenberg, 88 Ohio St. 192, 102 N. E. 737, 52 L. R. A. (N. S.) 510, 518, and note, Ann. Cas. 1914D, 1083. Of course, if it should be finally determined in a proper proceeding that the assignment was invalid, the Accessories Company would be entitled to a full performance of the contract between it and Chandlee, and the court should so provide.

The decree is reversed, with costs, and the lower court directed to enter a decree for specific performance of the contract in suit, in favor of the appellant, in accordance with the views expressed in this opinion.

Reversed.

Petition for rehearing denied April 14, 1923.
Motion to reconsider petition for rehearing denied April 24, 1923.