## SIMPSON BROS., Inc. v. DISTRICT OF COLUMBIA.

### No. 9745.

United States Court of Appeals.
District of Columbia Circuit.

Argued Nov. 16, 1948.

Decided Sept. 6, 1949.

Writ of Certiorari Denied Jan. 9, 1950.
See 70 S.Ct. 350.

Mr. John F. Hillyard, Washington. D. C., for appellant.

Mr. John J. Donnelly, Jr., Assistant Corporation Counsel, District of Columbia, with whom Mr. Vernon E. West, Corporation Counsel, and Mr. Chester H. Gray, Principal Assistant Corporation Counsel, who entered appearances, were on the brief, for appellee.

Before STEPHENS, Chief Judge, and PRETTYMAN and PROCTOR, Circuit Judges.

STEPHENS, Chief Judge.

On June 5, 1946, the appellee District of Columbia, hereafter referred to as the District, invited bids for the supplying of milk, cream and buttermilk, sometimes hereafter referred to as dairy products, from July 1 to September 30, 1946, inclusive, to various institutions maintained by the District. On June 21, 1946, the appellant Simpson Bros., Inc., hereafter referred to as Simpson, a distributor of dairy products, submitted a bid on a form prepared by the District.

This form included a so-called "escalator clause" reading as follows:

It is the intention of these specifications to obtain competitive proposals from dairies quoting prices for delivery of milk, cream, and buttermilk to institutions, schools, child day care centers, listed herein, in the quantities set forth in the attached schedule for the period beginning July 1, 1946, and ending September 30, 1946.

Should the maximum prices as promulgated by the Office of Price Administration, which are in effect on the date of the opening of these bids, be increased or decreased during the life of the contract, payment will be made by the District of Columbia at a rate of increase or decrease, not to exceed the same ratio that the prices herein quoted bear to the maximum prices authorized by the Office of Price Administration.

On June 26, by a letter from the District's Purchasing Officer, Simpson was notified that an "award" had been made to it for the supplying of dairy products to certain District institutions. Delivery of the dairy products was commenced by Simpson on July 1 and continued to and including September 30, although a formal contract was not executed by Simpson until August 17, and not by the Purchasing Officer until September 20, and although a required approval of the contract by the Board of Commissioners of the District did not take place until September 24.[1] The formal contract as executed and approved contained the escalator clause. Upon the theory that the prices bid by Simpson and set forth in the formal contract were controlling, the District paid those prices in the total sum of $21,369.21 for the dairy products delivered. Simpson then commenced suit in the District Court of the United States for the District of Columbia (now the United States District Court for the District of Columbia) to recover an additional $4,485.92, alleging in its complaint and in a supporting bill of particulars that this amount, additional to the bid prices, covered an "increase . . . approved by the Office

of Price Administration and its successors . . . ." and was due it under the escalator clause. By way of answer to the complaint and bill of particulars the District admitted execution of the formal contract and admitted that the dairy products were supplied by Simpson, but denied that the increased amount sued for was approved by the Office of Price Administration or its successors and denied liability for the additional amount claimed. The District then moved, under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A., for a summary judgment on the complaint, bill of particulars and answer upon the ground that there was no genuine issue of material fact, and that the District was entitled to judgment as a matter of law. In addition to the pleadings above mentioned a stipulation between the parties was filed to the effect that "upon final determination of this case the Court is requested to refer the matter to the Auditor of the Court for determination of the amount, if any, due plaintiff by the defendant, upon the basis of the ruling of the Court on the law." Simpson also moved for a summary judgment on the complaint, bill of particulars, answer and stipulation, and in this motion asserted that "since the parties hereto have by stipulation arrived at a definite amount on the account involved, which amount plaintiff claims is owing to it by defendant by reason of the provisions of the contract between said parties, this plaintiff concurs with the defendant that there is no genuine issue of material fact; and the plaintiff, Simpson . . . is entitled to judgment as a matter of law."

At a hearing before the district court upon the motions for summary judgment reference was made to a deposition of Philip A. Simpson, treasurer of Simpson, on file in the case and from this deposition and from argument by counsel for Simpson, it was

---

1. Approval by the Board was necessary because the contract involved a sum in excess of $1,000 and D.C.Code (Supp. VI 1948) § 1—245, Act of December 20, 1944, 58 Stat. 821, authorizing the Commissioners to appoint contracting officers provides that "no contract of $1,000 or more entered into on behalf of said District of Columbia by any contracting officer appointed pursuant to sections 1—244 to 1—249 shall be binding upon said District of Columbia, or give rise to any claim or demand against said District of Columbia, until approved by the Commissioners of the District of Columbia, or a majority of them, sitting as a Board."

made to appear that the foundation of Simpson's asserted right to the $4,485.92 prayed for in its complaint was this: By the Emergency Price Control Act of January 30, 1942, 56 Stat. 23, the Office of Price Administration, hereafter referred to as O.P.A., was established with authority in a Price Administrator to regulate throughout the United States, its territories and possessions and the District of Columbia, prices of commodities, including milk or food products processed from milk, and with authority also to make subsidy payments to domestic producers of such commodities. The effective period of this act ended June 30, 1943, but by subsequent acts it was extended from June 30, 1943, to June 30, 1946.[2] For some time prior to this date the Price Administrator had been making subsidy payments of 28¢ per cwt. to distributors of milk and milk products and of 90¢ per cwt. to producers of milk. But upon the termination on June 30, 1946, of the effective period of the Emergency Price Control Act the payment of these subsidies ceased. For the first two days of July, 1946, the loss occasioned to the distributors, including Simpson, and to the producers, by the cessation of these subsidy payments was absorbed by them. But commencing with July 3 and to and including September 30, the date of the termination of the contract in question in this case, the producers, represented by the Maryland-Virginia Milk Producers Association, to compensate themselves for the discontinuance of the subsidy to them, raised the price of milk sold to the distributors 90¢ per cwt.; and the distributors, in order to compensate themselves for this additional 90¢ together with the 28¢ per cwt. subsidy no longer paid to them, raised their price for milk and milk products to the consumer by the total of the two items, to wit, $1.18 per cwt. The percentage of increase represented by this amount, applied to the total quantity of dairy products delivered by Simpson to the District, constitutes a part of the sum of $4,485.92 prayed for in Simpson's complaint as due it, under the escalator clause, over and above the contract prices set forth in the formal contract. By the Price Control Extension Act of July 25, 1946, 60 Stat. 664, authority was reestablished in the O.P.A. to regulate the maximum prices of commodities, including milk or food products processed from milk, until June 30, 1947. But this act created a Price Decontrol Board with power to direct that maximum prices on certain commodities, including milk or food products processed from milk, be not regulated by the O.P.A. unless this Board should find, after a public hearing upon due notice and with opportunity for affected industries and consumers to present their views, that the price of a commodity had risen unreasonably above a price equal to the lawful maximum price in effect on June 30, 1946, plus the amount per unit of any subsidy payable with respect thereto as of June 29, 1946, and that such commodity was in short supply and that its regulation was practicable and enforceable, and that the public interest would be served by such regulation. The Price Control Extension Act further provided that if the Price Decontrol Board failed on or before August 20, 1946, to direct that a commodity be not regulated, then maximum prices and regulations and orders under the Emergency Price Control Act as amended would be applicable with respect to such commodity. On August 20, 1946, the Price Decontrol Board issued Decontrol Directive 1, 11 Fed.Reg. 9138 (1946), to the effect that, after a hearing held as required by the Price Control Extension Act, the Board was unable to make, in respect of milk and food products processed therefrom, the findings requisite (as above set forth) to further maximum price regulation by the O.P.A.

On September 14, 1946, the Department of Agriculture issued a Marketing Order, 7 Code Fed.Regs. § 945.7 (Supp.1946), increasing the minimum price of milk to producers from a previous $4.45 per cwt. to $5.35 per cwt. for the delivery periods April, May and June, and to $5.60 per cwt. for the delivery periods July through March. The 25¢ per cwt. increase from

2. The subsequent acts extending the effective period of the Emergency Price Control Act of January 30, 1942, were: Act of October 2, 1942, 56 Stat. 767; Act of June 30, 1944, 58 Stat. 632; Act of June 30, 1945, 59 Stat. 306.

$5.35 to $5.60 for the months July through March (and therefore including September, one of the months covered by the contract in question in this case), the distributors, including Simpson, were obliged to pay to the producers for milk, and in order to compensate themselves for this increase the distributors passed this amount on to the consumer. The percentage of increase represented by this amount, 25¢ per cwt., applied to the total quantity of dairy products deliivered by Simpson to the District between September 15 and September 30, 1946, constitutes the balance of the sum of $4,485.92 prayed for in Simpson's complaint as due it under the escalator clause.

The broad contention made by Simpson before the district court was that the price increases above described of 90¢, 28¢ and 25¢ per cwt., were made by Government agencies which were successors to the O.P.A. and that such increases therefore brought into operation the escalator clause. In respect of the Price Decontrol Board Simpson urged that that Board was in legal effect a successor to the O.P.A. since if the Board omitted to issue the directive provided for by the Price Control Extension Act, O.P.A. price regulations would again become effective. Simpson urged further that as such successor of the O.P.A. the Price Decontrol Board, in issuing a directive and thereby failing to find that the price of dairy products had risen unreasonably above a price equal to the lawful maximum price in effect on June 30, 1946, plus the amount per unit of any subsidy then payable, had tacitly given its approval to the price increase to consumers of $1.18 resulting from the discontinuance of the 90¢ and 28¢ per cwt. subsidies. In respect of the Department of Agriculture Simpson contended that that Department must as a matter of law be regarded as a successor to the O.P.A. and that its Marketing Order, in fixing the minimum price of milk to be paid the producer for the delivery periods April, May and June at $5.35 per cwt., to wit, 90¢ above the previous $4.45 per cwt. minimum price, was tacitly a retroactive endorsement of the 90¢ producers' increase in the price of milk to distributors resulting from the discontinuance of the 90¢ subsidy. Simp-

son contended also that in providing for a 25¢ increase, from $5.35 per cwt. to $5.60 per cwt., in the minimum price to be paid producers for milk for the months July through March, the Department tacitly approved of the resulting price increase in that amount to the distributors which was passed on by them to the consumer. The district court rejected the contentions of Simpson above described.

Simpson further contended before the district court at the hearing on the motions for summary judgment that it was its intention and that of the District at the time the contract was entered into that the escalator clause should cover such price increases as are above described, and accordingly urged that the court should consider evidence, in affidavit and deposition form, to such effect and that the court should so construe the escalator clause. The district court declined to consider such evidence or to construe the clause.

Thus rejecting all of the contentions of Simpson, the district court entered a summary judgment in favor of the District. [73 F.Supp. 858.] This appeal is from that judgment. The district court also denied the motion for summary judgment made by Simpson. On the appeal Simpson reiterates the contentions made before the district court.

■ We think that the district court correctly rejected the contentions of Simpson and properly entered a summary judgment in favor of the District. With respect to the first contention—that the price increases above described of 90¢, 28¢ and 25¢ per cwt., were made by Government agencies which were successors of the O.P.A. and were therefore within the escalator clause: Assuming, without deciding, that maximum price increases promulgated by agencies in legal effect successors of the O.P.A. could, as a matter of law, be considered "maximum prices as promulgated by the Office of Price Administration" within the terms of the escalator clause, it is clear that neither the Price Decontrol Board nor the Department of Agriculture was in legal effect a successor of the O.P.A. Simpson's contention that these agencies

were such successors is unsupported by either reason or authority. Both the Price Decontrol Board and the Department of Agriculture were coexistent with the O.P.A. as reestablished by the Price Control Extension Act. Morever, the O.P.A. was a price promulgating agency. The Price Decontrol Board was not. If it failed to direct that a commodity be not regulated, then maximum prices and regulations and orders under the Emergency Price Control Act as amended were to be applicable; but such prices, regulations and orders were to be those of the O.P.A., not those of the Price Decontrol Board. So far as the Department of Agriculture is concerned, its authority was to establish minimum prices. 48 Stat. 31 (1933), as amended by 50 Stat. 246 (1937). Therefore it could hardly be considered in legal effect a successor of the O.P.A. which had authority to establish maximum prices.

■ With respect to the contention of Simpson that the district court should have considered evidence assertedly tending to prove that at the time of the consummation of the contract it was the intention of Simpson and the District that the escalator clause should cover such price increases as are above described: Such evidence would have been admissible only to interpret the escalator clause if ambiguous. In the absence of ambiguity the intent of the parties to a contract must be ascertained from the language thereof without resort to parol evidence or extrinsic circumstances. Machen v. Yost, 1924, 54 App.D.C. 261, 296 F. 1008; No-Leak-O Piston Ring Co. v. Chandlee, 1923, 53 App.D.C. 128, 289 F. 526. The authorities relied upon by Simpson in this aspect of the case involve situations in which the courts, regarding a writing as ambiguous, received evidence to explain or interpret it. See, for example, Roper v. Capital View Realty Co., 1939, 71 App.D.C. 105, 107 F.2d 833; District of Columbia v. Northeastern Const. Co., 1934, 63 App.D.C. 175, 70 F.2d 779; Karrick v. McEachern, 1924, 55 App.D.C. 77, 2 F.2d 126; Dudley v. Owen, 1908, 31 App.D.C. 177. The escalator clause involved in the instant case is without ambiguity. The district court was therefore bound to apply it as written rather than according to some asserted interpretation.

■ Upon the granting by the district court of the District's motion for summary judgment and the denial of the motion of Simpson for summary judgment, Simpson requested the court to make findings of fact and conclusions of law. This the court declined to do. On this appeal this is urged as error. The ruling of the district court in this respect was correct. Rule 52(a), Federal Rules of Civil Procedure, as in effect at the time of the court's disposition of the motions for summary judgment provided:

In all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; and in granting or refusing interlocutory injunctions the court shall similarly set forth the findings of fact and conclusions of law which constitute the grounds of its action....

But the instant case was not tried upon the facts and did not involve the granting or refusing of an interlocutory injunction. It was disposed of upon motions for summary judgment under Rule 56(c) which, as in effect at the time of the disposition of the motions for summary judgment, provided that:

...The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Associates Discount Corporation v. Crow, 1940, 71 App.D.C. 336, 110 F.2d 126, cited by Simpson in support of the contention that the district court should have made findings of fact and conclusions of law, involved a dispute as to material facts. The opinion in the case so states. We held in Thomas v. Peyser, 1941, 73 App.D.C. 155, 118 F.2d 369, that findings of fact and conclusions of law need not be made by a trial court on the granting of a motion to dismiss since in such a case there is no trial upon the facts, the facts being admitted by the motion. We said: "Obviously there need be no fact findings where facts are not in issue. The only issues determined by the trial court were questions of law and these

adequately disposed of the case." (73 App. D.C. at 160, 118 F.2d at 374) The amendments to Rule 52(a) and Rule 56(c) effective March 19, 1948, do not alter their meaning in any respect pertinent to the point immediately under consideration. Indeed, the amendment to Rule 52(a) specifically provides that "Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." The Note to this amendment states: "The last sentence of Rule 52 (a) as amended will remove any doubt that findings and conclusions are unnecessary upon decision of a motion, particularly one under Rule 12 or Rule 56, except as provided in amended Rule 41(b)." The Note cites Thomas v. Peyser, supra.[3]

Simpson further contends on this appeal that there were genuine issues as to material facts which forbade the granting by the district court of a summary judgment: Simpson asserts that there was a genuine issue of material fact as to whether or not the O.P.A. was "factually" succeeded, as a result of Congressional legislation, by other Governmental agencies. This is not an issue of fact but one of law to be determined by consideration of the Congressional legislation. It has been pointed out above that the Price Decontrol Board and the Department of Agriculture, the only two agencies asserted by Simpson to be successors of the O.P.A. were not such successors. Simpson asserts that there was a genuine issue of material fact as to whether or not such asserted successor agencies approved an increase in the price of milk between July 1, 1946, and September 30, 1946. Assuming a genuine issue on this subject, it was not one as to a material fact because, the Price Decontrol Board and the Department of Agriculture not being, as above pointed out, successors of the O.P.A., approval by them of an increase in the price of milk would be immaterial. Simpson asserts that there was a genuine issue of material fact as to whether or not it was intended by the Dis-

trict and Simpson at the time of the consummation of the contract that the escalator clause was to cover such price increases as are involved in this case. Assuming a genuine issue on this subject, it is not one as to a material fact for the reason that, the escalator clause being, as above pointed out, unambiguous, no intention of the parties not expressed in the contract is material. Simpson asserts that there was a genuine issue of material fact as to whether or not the Purchasing Officer of the District drew the contract in suit and the escalator clause and recommended to the Board of Commissioners of the District that the price increases, a right to charge for which is claimed by Simpson, be paid. Assuming a genuine issue on this subject, it is again not one of material fact. The escalator clause being clear and therefore not subject to construction, the fact that it was drawn by the Purchasing Officer and that he made the asserted recommendation is immaterial.

It is to be noted that the contention of Simpson that there were genuine issues of material fact is in direct conflict with a statement in its own motion for summary judgment. Simpson attempts to justify this conflict by quoting from Garrett Biblical Institute v. American University, 1947, 82 U.S.App.D.C. 265, 163 F.2d 265, the following: " 'It does not follow that, merely because each side moves for a summary judgment, there is no issue of material fact.' " (82 U.S.App.D.C. at 266, 163 F.2d at 266) But Simpson omitted to quote the immediately succeeding sentence: " 'For, although a defendant may, on his own motion, assert that, accepting his legal theory, the facts are undisputed, he may be able and should always be allowed to show that, if plaintiff's legal theory be adopted, a genuine dispute as to a material fact exists.' " (Ibid.) Only when the two sentences are read together does the true import of the court's ruling appear. The two sentences were themselves quotations from Walling v. Richmond Screw Anchor Co., 2 Cir., 1946, 154 F.2d 780, 784, cer-

3. Rule 12 relates to defenses and objections—when and how presented—by pleading or motion—and to motion for judgment on the pleadings. Rule 41 (b) relates to dismissal of an action on a defendant's motion after the plaintiff has completed the presentation of his evidence.

tiorari denied 1946, 328 U.S. 870, 66 S.Ct 1383, 90 L.Ed. 1640, and read together they are correct both as stated and, of course, conversely, i. e., as applied to a plaintiff. But in the instant case the district court properly adopted the legal theory of the District, to wit, that the escalator clause was without ambiguity and therefore was not subject to construction and that neither the Price Decontrol Board nor the Department of Agriculture was in legal effect a successor of the O.P.A. Under this legal theory there was no genuine issue as to a material fact. The terms of the escalator clause were without dispute and were, as said above, without ambiguity; and the terms of the statutes defining the powers of the O.P.A., the Price Decontrol Board, and the Department of Agriculture also were without dispute and clear.

■ Finally Simpson contends that the district court conceded at the outset of the hearing on the motions that it had not read the pleadings in the case. Failure by a trial court to familiarize itself with the pleadings at the outset of a hearing is likely to result in erroneous rulings. But an oral summary by counsel is at times a sufficient substitute. Moreover, in many cases the pleadings have been considered at a pre-trial conference and the issues limited in a pre-trial order. The brief of the appellant indicates that there was a pre-trial conference in the instant case, although what order, if any, was entered does not appear—as it should—from the record. But the record in this case and the opinion of the district court show that by the end of the hearing on the motions for summary judgment the court was acquainted with the issues in the case and that the conclusion reached by the court was—in view of all of the pleadings, deposition, affidavits and authorities—correct. We do not therefore find reversible error in the failure of the district court to read the pleadings at the outset of the hearing on the motions.

The judgment of the district court is

Affirmed.