## NATHAN WORTH

*v.*

## ERNEST WATTS, executor.

[Submitted April 27th, 1908. Decided June 2d, 1908.]

1. Reaffirmance by vendor of the original contract of sale on six several occasions, extending over a period of eighteen months, and receipt by him, in the aggregate, of all but $200 of the price, cannot be properly disregarded, where presented, in specific performance, to repel a presumption of fraud which might arise from inadequacy of price.

2. Though equity will not decree specific performance of a contract which is unfair or unjust, any inadequacy of price, unaccompanied by other evidence of fraud, which is not so gross as to be of itself conclusive evidence of fraud, will not bar the relief sought, but may be considered in connection with other circumstances tending to show undue advantage or other elements of fraud.

On pleadings and proofs.

The bill is filed by complainant to procure the specific performance of an agreement for the sale of land, made by Firman Dubel in his lifetime. The following is a copy of a receipt embodying the agreement which complainant seeks to enforce:

39

"BURLINGTON, N. J., February 2, 1904.

"Received from Nathan Worth two thousand five hundred dollars ($2,500) on account of purchase price for house and lots 303, 305 High street, and 20 and 22 Union street, Burlington, N. J., which I agreed to sell to him clear of all encumbrances for four thousand ($4,000), deed to be delivered on the payment of the balance of the money, but to continue paying rent as before, until balance is paid.

"FIRMAN DUBEL."

The body of this paper is in the handwriting of complainant, and the signature is that of defendant's testator.

Six additional receipts for payments, on account of the purchase price of the property, were received in evidence. These receipts are dated, respectively, June 17th, 1904, July 11th, 1904, August 15th, 1904, September 19th, 1904, October 18th, 1904, and November 1st, 1904, and aggregate in amount $1,300. The same language is used in each receipt, and the body of each receipt is in the handwriting of complainant, and each is signed by defendant's testator. These receipts, omitting dates and amounts, are as follows:

"Received of Nathan Worth ———— dollars as a payment for properties 303–305 High street and 20 and 22 Union street, Burlington, N. J., agreed to be sold by me to him as per receipt of February 2, 1904.

"FIRMAN DUBEL."

Firman Dubel died December 28th, 1904, and upon the refusal of defendant, as his executor, to accept $200, which was tendered to him by complainant as the balance of the purchase price, this suit for specific performance of the contract was brought.

At the date of the agreement (February 2d, 1904) complainant was occupying the premises referred to as 303 and 305 High street, under a lease from Dubel made June 10th, 1902, at a rental of $40 per month for the first year, and $45 per month for the two subsequent years. At the end of the first year the increased rental provided for in the lease was waived by Dubel, and complainant thereafter continued to occupy the premises at $40 per month.

Defendant has undertaken to establish such fraud, in connection with the agreement of sale which complainant seeks to enforce, as will operate to deny the relief sought.

*Mr. John W. Wescott* and *Mr. Alexander J. Brian,* for the complainant.

*Mr. Eckard P. Budd* and *Mr. Joseph H. Gaskill,* for the defendant.

LEAMING, V. C. (after stating the facts as above).

Defendant urges that the consideration named in the agreement is so grossly inadequate that it affords conclusive evidence of fraud. The law of this state touching inadequacy of consideration, as a defence to a suit for specific performance of a contract for the sale of land, may, I think, be said to be well settled. A court of equity will not refuse to decree the specific performance of a private contract for the sale of land because the price for which the land is to be sold is less than the market value of the land. Inadequacy of price, however, is a feature which may be considered in determining the existence of fraud. It may, in connection with other evidence, establish the existence of fraud, or the inadequacy of price may be so gross as to shock the conscience of the court, and thus furnish satisfactory and decisive evidence of fraud. In either case it may be said to be the fraud so ascertained, and not the inadequacy of price, which operates as the bar to relief. *Rodman* v. *Zilley, 1 N. J. Eq. (Sax.) 320; Executors of Wintermute* v. *Executors of Snyder, 3 N. J. Eq. (2 Gr. Ch.) 489; Ready* v. *Noakes, 29 N. J. Eq. (2 Stew.) 497; Shaddle* v. *Disborough, 30 N. J. Eq. (3 Stew.) 370, 384; Phillips* v. *Pullen, 45 N. J. Eq. (18 Stew.) 5.*

In the present case the difference between the market value of the land in question and the price named in the agreement for its sale closely approaches that which some eminent judges have defined as "gross inadequacy." Ten witnesses testified, in behalf of defendant, touching the value of the premises described in the contract of sale. From their testimony it is apparent that the value of the premises was about $10,000 at the date of the contract. Assuming that amount to have been the value of the premises named in the contract of sale, it will be observed that the consideration specified in the contract was something less

than one-half of the value of the property. Any extended review of the adjudicated cases, with a view of ascertaining when the difference between the value and contract price may be said to become so great as to amount to gross inadequacy, and shock the conscience of the court, and in itself operate to deny relief, would, I think, be of little assistance. Most of the authorities touching that subject will be found collected in a footnote to *26 Am. & Eng. Encycl. L. (2d ed.) 28.* Any considerable inadequacy of price naturally suggests unfair dealing on the part of the one favored by the terms of the contract, when the engagement is considered, as it must be, as a contract, and not as a gratuity, but it is difficult to conceive any case in which some circumstance may not exist which will operate to either repel or to accentuate such suggestion of unfair dealing. Even in a case where there exists such gross inadequacy of price as may be appropriately said to shock the conscience of the court, and afford in itself satisfactory and convincing evidence of unfair dealing, other circumstances may exist, which, if considered, would tend to destroy the conclusion which might be otherwise reached. Such circumstances should, I think, be given due consideration. I am convinced that where it is established (as I understand it to be, both in this state and by the weight of authority elsewhere) that it is the ascertained fraud, and not the inadequacy of price, which operates as the bar to specific performance, such fraud must be ascertained by a consideration of all the circumstances of the individual case, and that it is quite impracticable to define any exact ratio between values and price as a boundary line, which, when crossed, affords, in itself, conclusive evidence of fraud. One feature of the present case well illustrates the thought here suggested. While the inadequacy of price in the present contract of sale may suggest that complainant in some improper way obtained an unjust advantage over defendant's testator when the original agreement was made, yet the mind cannot close itself from the knowledge that on June 17th, 1904, over three months after the original receipt, which embodied the terms of the agreement, was signed, defendant's testator signed a receipt for another portion of the purchase price, and in that receipt specifically referred to the

receipt of February 2d, 1904, as embodying the terms of the agreement of sale. If this second transaction was fairly conducted, it was a reaffirmance, by defendant's testator, of the terms of the original agreement. Again, in the following July, August, September and October, respectively, additional receipts for portions of the purchase price were signed by defendant's testator, and in each receipt the original contract was, in like manner, referred to. Thus on six several occasions, extending over a period of eighteen months, defendant's testator reaffirmed the original contract, and received, in the aggregate, all but $200 of the purchase price. His death occurred in the month following the payment last referred to. Assuming that these payments were actually made at the times stated, and that the contents of the several receipts were fully understood by defendant's testator, it seems clear that such repeated affirmances of the original contract would have operated as a serious bar to any claim, which might have been thereafter made by defendant's testator for a rescission of the contract, based upon fraud in the original transaction. Surely such affirmances of the contract cannot be properly disregarded, when presented to repel an assumption of fraud arising from an inadequacy of price, of a degree which, standing alone, might be sufficient to lead the mind to a conviction of fraud. It is my opinion that specific performance of this contract cannot be properly denied upon the theory that the inadequacy of price, in itself, furnishes conclusive evidence of fraud.

But it is earnestly urged, in behalf of defendant, that other circumstances of the case, when considered in connection with the evidence touching inadequacy of price, justify the conclusion of fraud, or disclose a contract of such unfairness and hardship that a court of equity should deny relief. While a court of equity will not decree specific performance of a contract which is unfair, unreasonable, or unjust, any inadequacy of price (standing alone, and unaccompanied by other evidence of fraud or imposition), which is not so gross as to be, of itself, what some courts call conclusive evidence of fraud, cannot be treated as such an instance of unfairness or hardship as will bar the equitable relief sought; but such inadequacy may be considered

in connection with other circumstances tending to show undue advantage, or other elements of fraud. As already stated, I understand that to be the rule established in this state, and also by the more modern authorities elsewhere. See *Pom. Con.* § *194,* and cases there collected. A number of circumstances, other than inadequacy of consideration, are urged by defendant as evidences of fraud upon the part of complainant. It has been shown that defendant's testator was eighty-four years of age; that he was a man with careless methods of doing business; that he was of a trustful nature, and habitually signed receipts without first reading them, and usually received money without counting it; that he drank to excess, and was more or less drunk almost every day; and it is also urged that complainant did not have sufficient money to enable him to make the payments evidenced by the receipts, to which reference has already been made. It was also shown that defendant's testator made some permanent improvements to one of the buildings covered by the contract, at a date subsequent to the date of the contract. I have undertaken to give adequate consideration to all of these circumstances, in connection with the low price at which the property was sold, with a view of reaching the conclusion that some improper conduct upon the part of the complainant may have existed; but I have been unable to reach that conclusion of fact. Any suggestions of improper conduct upon the part of complainant, emanating from the circumstances referred to, fail to impress upon my mind a conviction of fact; and especially is this true when all the evidence in the case is given due consideration. The suggestion arising from the advanced age and intemperate habits of defendant's testator, and from his custom to sign receipts without reading them, is that the signature to the contract may have been procured by complainant through some subterfuge, or that defendant's testator may have been incapable of fully comprehending his acts. But defendant's testator was a man who owned a considerable number of properties in that vicinity, and these properties were successfully handled by him, and his ability to intelligently transact his own business does not appear to have been materially impaired by either his age or intoxication. The impression of the man, as I have re-

ceived it from the evidence, is that of a man who was quite as capable of making a bargain when under the influence of liquor as at other times. While he appears to have been in the habit of signing rent receipts for various tenants without reading the receipts, he was keenly aware of the times when the rent was due, and it cannot be inferred that he could have been induced to sign papers when nothing was due him, as he must have done if the contract now in question and the several receipts for payments on account of the contract price were signed by him when the payments called for in the receipts were not in fact made; for it must not be overlooked that if it be assumed that the original receipt, which embodies the terms of the contract, was signed by defendant's testator without an intelligent knowledge of its contents and force, or through any subterfuge upon the part of complainant, a like assumption must be indulged touching the several subsequent receipts, and it is impossible for me to believe that complainant has procured the signature to these seven papers without defendant's testator having comprehended the nature of any of them. Each month a rent receipt was signed in a book kept by complainant for that purpose. As to the claim that complainant was not able to raise the money which the receipts disclose that he paid for the property, it is my opinion that the claim is not supported by the evidence. While I have referred to the value of the premises in question as $10,000 ($9,000 for the property which complainant occupied as a tenant, and $1,000 for the property in the rear, which was occupied by the Salvation Army), it also appears that the rental paid by complainant was $40 per month, and by the other tenants $15 per month; and, according to the testimony, this rental, when used as a guide to determine valuation, indicates a total value of about $7,000. It is, of course, impossible to determine what may have impelled defendant's testator to agree to part with his property for the amount named. The diversified considerations which control human conduct are too complex to warrant the effort of affirmative ascertainment. The evidence discloses that the relation of the contracting parties was, to say the least, friendly. That fact alone renders it natural and reasonable that the terms of payment should be made easy rather

than otherwise. As the case has been tried upon the theory, on the part of counsel on both sides, that our statute forbids testimony, by either of the present parties to the record, touching statements made by or transactions with the deceased, we are denied the benefit of their testimony in that field. But the evidence discloses that the contract was in fact made, and I find nothing in the case to lead my mind to the conclusion that the contract was not the intelligent and deliberate act of defendant's testator.

I will advise a decree pursuant to the prayer of the bill.