## GABRIELSON v. HOGAN et al.*

(Circuit Court of Appeals, Eighth Circuit. April 30, 1924.)

No. 6415.

1. **Specific performance ⬥➡66—Vendor may maintain suit for specific performance.**

A vendor has an equal right with the purchaser to maintain a suit in equity for specific performance.

2. **Specific performance ⬥➡8—Rests in judicial discretion of court.**

Specific performance is not an absolute right, but rests in sound judicial discretion, controlled by established principles of equity, and in the exercise of such discretion the court may refuse specific enforcement of a contract, though legally valid.

3. **Appeal and error ⬥➡1009(3)—Findings of fact of trial court presumptively correct.**

Findings of fact, made by a chancellor on conflicting testimony of witnesses examined before him, will usually be accepted as correct by the appellate court.

4. **Specific performance ⬥➡51—Excessive price, considered with other facts, held to justify refusal of specific performance of a contract for sale of a farm.**

A finding that the price defendants contracted to pay for a farm was a third more than its market value, considered with other facts, as that defendants were strangers and relied on statements by others, who, without their knowledge, had an interest in the sale, *held* to justify refusal of the court to enforce specific performance at suit of the vendor.

5. **Equity ⬥➡39(2)—Where jurisdiction is acquired, court should grant appropriate legal relief.**

When a case brought is clearly one in equity, and both parties submit it to equity jurisdiction, it is the duty of the court to finally dispose of the whole controversy and grant the relief to which the parties may be entitled, though it be legal and not equitable in character.

6. **Vendor and purchaser ⬥➡330—Measure of damages on breach of contract for purchase of farm.**

On breach by defendants of a contract to purchase a farm from complainant at a price in excess of its value, the measure of complainant's damages is the difference between the actual value of the farm at the time of the breach and the contract price.

Appeal from the District Court of the United States for the Northern District of Iowa; George C. Scott, Judge.

Suit in equity by Oscar Gabrielson against M. L. Hogan and others. Decree of dismissal, and complainant appeals. Affirmed in part, and reversed in part.

E. E. Wagner, of Sioux City, Iowa (Alan Bogue, of Parker, S D., R. M. Sheild, of Salem, S. D., and Robert B. Pike and Karl J. Knoepfler, both of Sioux City, Iowa, on the brief), for appellant.

J. F. Kass, of Sioux City, Iowa (Kass Bros., of Sioux City, Iowa, and Baldwin & Lyons, of Howard, S. D, on the brief), for appellees.

Before LEWIS, Circuit Judge, and BOOTH and SYMES, District Judges.

LEWIS, Circuit Judge. M. L. Hogan and son, both residents of Iowa, went to Miner County, South Dakota, in August, 1920, with a view to buying a farm. They spent about two weeks driving through

---

⬥➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied July 21, 1924.

the country, making inquiries about prices of land and looking over farms reported to be for sale. In company with a Mr. Goff they went over and examined appellant's farm of 160 acres, and on August 28 entered into a contract to buy it. M. J. Quinn, son-in-law of the elder Hogan, signed the contract with them as purchaser. The Hogans and Quinn agreed to purchase the farm on a basis of $29,000. It was incumbered with a mortgage lien for $16,000, which they agreed to assume. For the remaining $13,000 they were to give a second mortgage of $5,000 and pay $8,000 in cash installments, all to be completed and closed on February 1, 1921. They paid $3,450 of the $8,000 and then failed to make further payments. The $5,000 mortgage was not given. On the day the contract was executed Hogans and Quinn, with the knowledge of Gabrielson, entered into a lease contract with one Williams, leasing the farm to Williams for a year beginning March 1, 1921. Williams was at that time in possession as the tenant of Gabrielson. No rents have been received by the Hogans and Quinn. Apparently they were unable to raise the balance of cash payments, $4,550; and after an unsuccessful effort by the younger Hogan to induce Gabrielson to release the Hogans and Quinn from the contract, the subject became quiescent. Gabrielson paid the taxes and the interest on the $16,000 mortgage as they fell due, and brought this suit in August, 1921, against the Hogans and Quinn for specific performance. He set out the contract, admitted receipt of $3,450, on the purchase price, alleged that no part of the balance had been paid, asked judgment for $9,550 and tendered a deed. The defendants answered admitting execution of the contract, but alleged fraudulent statements and representations on the part of Gabrielson which induced them to enter into the contract, and which they alleged entitled them to rescission, for which they prayed, and by cross-complaint alleged that they had paid the plaintiff $3,450, which they sought to recover. Plaintiff replied denying that the alleged fraudulent statements and representations had been made, that if made defendants did not rely on them, and that by their subsequent conduct defendants were estopped to now set them up.

The testimony was taken in court at the trial, and the court found that the land was not worth more than $135 per acre at the time the contract was entered into. The agreed purchase price was at the rate of $181.25 per acre. This difference, coupled with other facts mentioned by the court, brought it to the conclusion that the contract was inequitable toward the defendants, and they should not be compelled to perform. Other circumstances relied on to support the conclusion appear to be the testimony of the Hogans as to representations made by Gabrielson, that the rental for the farm for 1919 had been about $2,000, whereas it was only about half that amount; that lands in that vicinity were selling at from $190 to $250 per acre, which also was not true; that a certain part of the farm was not subject to overflow, whereas it was; and that Mr. Goff, who lived adjoining the farm and advised with them about its purchase, was in fact the agent of Gabrielson, which fact was unknown to them at the time. The fact that the Hogans and Quinn were strangers in that community and not personally familiar with local conditions was a circumstance also apparently influencing the court

to its conclusions. This testimony in behalf of defendants did not go unchallenged; Gabrielson denied the statements attributed to him. He testified that he made no such statements. The court did not expressly pass on the defense of fraud set up in the answer and plead as a ground for cancellation, but apparently was of the opinion that even if those facts had been established and constituted a good defense, the defendants were estopped to set it up because they continued negotiations with Gabrielson in an endeavor to adjust their default in payments, as late as in May, 1921, and made no claim until this suit was brought that there was any ground for cancellation of the contract or that they had been defrauded. It was concluded that the plaintiff sought only a money judgment, that he should have sued at law, and that the evidence failed to present a situation demanding the interference of a court of equity; and it was ordered that plaintiff's bill and the defendants' cross-bill both be dismissed.

[1] Clearly, the appellant had a right to bring his suit as he did, in a court of equity for specific performance. He tendered a deed, performance on his part, and asked that defendants be required to pay the agreed consideration. A vendor is as much entitled to the equitable remedy as the vendee. Raymond v. San Gabriel Valley Land & Water Co., 53 Fed. 883, 4 C. C. A. 89; McClurg v. Crawford, 209 Fed. 340, 126 C. C. A. 266; Donahoe v. Franks (D. C.) 199 Fed. 263, 267; Wilhite v. Skelton, 149 Fed. 67, 72, 78 C. C. A. 635; 26 Am. & Eng. Ency. of Law (2d Ed.) pp. 104, 106.

[2] The principal question here is whether the court was right in withholding from Gabrielson the equitable relief which he sought. We do not doubt the validity of the contract. Hogans and Quinn are clearly bound by it. Their defense of fraud was not made out. They present no facts that would sustain a decree relieving them. But the fact that they are bound and liable to Gabrielson for the breach does not determine the character of relief that he may have, whether equitable or legal. It has ever been held that specific performance is not an absolute right, but that it rests in sound judicial discretion, controlled by established principles of equity, to be exercised by the chancellor upon consideration of all the circumstances of each particular case, and unless it appear that that discretion, in granting or refusing to grant the relief, has been unwisely exercised or abused, or unjustly applied in a given case, there is nothing presented to an appellate court for correction. In Pope Mfg. Co. v. Gormully, 144 U. S. 224, 236, 12 Sup. Ct. 632, 637 (36 L. Ed. 414), it is said:

"To stay the arm of a court of equity from enforcing a contract it is by no means necessary to prove that it is invalid; from time to time immemorial it has been the recognized duty of such courts to exercise a discretion; to refuse their aid in the enforcement of unconscionable, oppressive or iniquitous contracts; and to turn the party claiming the benefit of such contract over to a court of law. This distinction was recognized by this court in Catacart v. Robinson, 5 Pet. 264, 276, wherein Chief Justice Marshall says: 'The difference between that degree of unfairness which will induce a court of equity to interfere actively by setting aside a contract, and that which will induce a court to withhold its aid, is well settled. 10 Ves. 292; 2 Coxe's Cases in Chancery, 77. It is said that the plaintiff must come into court with clean hands, and that a defendant may resist a bill for specific performance, by showing that under the circumstances the plaintiff is not entitled to the relief

he asks. Omission or mistake in the agreement, or that it is unconscientious or unreasonable, or that there has been concealment, misrepresentation or any unfairness, are enumerated among the causes which will induce the court to refuse its aid.' "

In Jackson v. Ashton, 11 Pet. 228, 229, 248 (9 L. Ed. 698), it is held that:

"A court of chancery will often refuse to enforce a contract, specifically, when it would also refuse to annul it."

[3] The district judge saw the witnesses and heard them testify. In his memorandum opinion he said:

"After a careful analysis of the whole record I am impressed with the con-viction that the Hogans in the main told the substantial truth."

And he found that the contract as made was inequitable toward the defendants. We cannot say that the record does not justify that conclusion. The Hogans were strangers in Miner County and not familiar with conditions there. They were in the position of having to rely, in large part, on what they heard. The representations made to them and statements of facts which they claim were made relative to the farm and its value were not of such character as to render the contract voidable, in view of their personal examination of the farm; nevertheless, those things undoubtedly influenced them in making the contract. They appear to have talked more with Mr. Goff, who lived just across the road from the farm and who had at one time owned it, than with anyone else about purchasing it. They apparently relied much on what he said to them. He took them to see Gabrielson, who lived some ten miles away. Mr. Goff testified that while Gabrielson did not expressly employ him as agent to sell the farm, he told Goff that he would lose nothing in the transaction and Goff said he expected Gabrielson to pay him. These facts and circumstances, in connection with the finding of the court that the farm was worth not more than $135 per acre at the time the contract was entered into sustain, we think, the conclusion of the court. There is testimony in the record that the farm at that time was worth greatly more than $135 per acre. There is also testimony that it was worth less. Considering the advantage that the district judge had in seeing and hearing the witnesses testify, we are disposed to accept his finding as to value and think we should do so. Savage v. Shields (C. C. A.) 293 Fed. 863, 865. In King v. Hamilton, 4 Pet. 311, 328 (7 L. Ed. 869), it is said:

"When a party comes into a court of chancery, seeking equity, he is bound to do justice, and not ask the court to become the instrument of iniquity. Where a contract is hard, and destitute of all equity. the court will leave parties to their remedy at law; and if that has been lost by negligence, they must abide by it.. It is a settled rule, therefore, to allow a defendant in a bill for a specific performance of a contract to show that it is unreasonable or unconscientious, or founded in mistake, or other circumstances, leading satisfactorily to the conclusion, that granting the prayer of the bill would be inequitable and unjust."

[4] According to the court's finding, the contract price was a third more than the value of the farm. The pertinency of that fact to the question under consideration is clearly stated in Cathcart v. Robinson, 5 Pet. 264, 271 (8 L. Ed. 120) thus:

"At any rate, this excess of price over value, if the contract be free from imposition, is not, in itself, sufficient to prevent a decree for a specific performance. But, though it will not, standing alone, prevent a court of chancery from enforcing a contract, it is an ingredient which, associated with others, will contribute to prevent the interference of a court of equity."

District Judge Baker, in Federal Oil Co. v. Western Oil Co. (C. C.) 112 Fed. 373, 375, said:

"Before granting a decree the court must be satisfied not only of the existence of a valid contract, free from fraud and enforcible at law, but also of its fairness and of its harmony with equity and good conscience; and any facts showing that the contract is unfair, unjust, and against good conscience will justify the court in refusing to decree its performance."

See, also, Wesley v. Eells, 177 U. S. 371, 376, 20 Sup. Ct. 661, 44 L. Ed. 810; McCabe v. Matthews, 155 U. S. 550, 15 Sup. Ct. 190, 39 L. Ed. 256; Willard v. Tayloe, 8 Wall. 557, 19 L. Ed. 501; Leicester Piano Co. v. Front Royal & Riverton Imp. Co., 55 Fed. 190, 201, 5 C. C. A. 60; Greison v. Winey (D. C.) 226 Fed. 302; Marks v. Gates, 154 Fed. 481, 83 C. C. A. 321, 14 L. R. A. (N. S.) 317, 12 Ann. Cas. 120; Federal Oil Co. v. Western Oil Co., 121 Fed. 674, 676, 57 C. C. A. 428; Worth v. Watts, 74 N. J. Eq. 609, 70 Atl. 357; Norris v. Clark, 72 N. H. 442, 57 Atl. 334; Shoop v. Burnside, 78 Kan. 871, 98 Pac. 202; Grizzle v. Sutherland, 88 Va. 584, 14 S. E. 332.

[5] It is assigned as error that the dismissal of appellant's bill turned him out of court and denied him any relief, and that on the facts that should not have been done. Equity jurisdiction was at no time challenged, as already pointed out. The subject-matter, the facts stated, and the parties brought the controversy within equitable cognizance. That appellant was held to be not entitled to the equitable relief which he sought, was not a sufficient reason to deny to him any other relief to which he might be entitled. He prayed for such other relief as the court might find on the facts he ought to have. The whole controversy was submitted to the court by both parties; and having appropriately obtained jurisdiction over the entire matter we think it was the duty of the court to make final disposition, and that it was error not to do so. When the case is clearly one in equity, when both parties submit the case to equity jurisdiction, it is then the duty of the court to finally dispose of the whole controversy, and the relief to which the parties may be entitled on the facts should be granted, though that relief be legal and not equitable in character. Waite v. O'Neil, 76 Fed. 408, 22 C. C. A. 248, 34 L. R. A. 550; Id. (C. C.) 72 Fed. 348; Mobile v. Kimball, 102 U. S. 691, 706, 26 L. Ed. 238; Gormely v. Clark, 134 U. S. 338, 349, 10 Sup. Ct. 554, 33 L. Ed. 909.

[6] On conflicting testimony the court made this finding:

"I think the most reliable testimony offered on the trial shows that this land was worth at the time the Hogans bought it not more than $135 per acre."

Both parties offered testimony at length on the subject of value and from it the finding was made. This seems a fair conclusion. When the Hogans and Quinn breached the contract Gabrielson was thereby damaged to the extent of the difference between the contract price and

the value of the land, Telfener v. Russ, 145 U. S. 522, 12 Sup. Ct. 930, 36 L. Ed. 800; and according to the finding of the court that difference amounted to $7,400. But Gabrielson received from appellees $3,-450. We see no escape from the conclusion that he was entitled to a judgment for $3,950, the remainder of the amount to which he had been damaged; unless it be that either of the parties claims that the market value of the farm at the time of the breach had changed from what it was at the time the contract was made, and desires to and represents to the court that he can adduce evidence on that issue to his advantage.

The action of the court in denying specific performance is affirmed, its action in dismissing appellant's complaint is reversed. The cause will be remanded with directions to reinstate the complaint and adjudge the amount of damage sustained by Gabrielson either on the record already made, or after taking additional evidence on that issue. The court after hearing counsel will be advised as to further procedure in protection of the rights of the parties.