### BARR v. CARNAHAN et al.

Circuit Court of Appeals, Eighth Circuit.
September 7, 1929.

No. 8527.

George I. Craven, of Lincoln, Neb., for appellant.

C. H. Denney, of Fairbury, Neb. (Denney & Denney, of Fairbury, Neb., on the brief), for appellees.

Before STONE, Circuit Judge, and REEVES, District Judge.

STONE, Circuit Judge. This is an action by G. V. Carnahan, Omar G. Foster, and Omar G. Foster, as administrator of Sadie A. Foster, against Emil Podlesak and James G. Barr, to cancel or to reform a contract for sale of certain real estate. Barr is assignee of Podlesak as to all rights under the above contract. Barr filed an answer and a counterclaim in which he sought specific performance of the above contract. Later, an amendment was made to this counterclaim bringing in parties to whom the land had (after the above answer) been conveyed and mortgaged and asking cancellation of such conveyance and mortgage. After hearing on the merits, the court dismissed the complaint and also dismissed the counterclaim without prejudice to any action at law which Barr might have. Barr brings this appeal.

Long prior to and upon September 14, 1925, G. V. Carnahan and Sadie A. Foster owned 160 acres of land (less about 7 acres constituting a railway right of way) in undivided halves. Mrs. Foster died the following November, and Omar G. Foster succeeded to her title therein.

From in 1916, R. B. Steele had been operating an extensive gravel pit on this land. His right to do so rested upon several successive instruments. The first is a contract

"leasing" the tract for the purpose of extracting sand and gravel upon a royalty basis of 12½ cents per cubic foot. This right was to continue from July 1, 1916, "so long as the said R. B. Steele or his assigns shall desire to use and retain said premises for the purposes hereinbefore set out." In 1917, this contract was altered in respect to the royalty. February 2, 1922, a contract of sale or option was made whereby Steele made an advanced royalty payment of $500, and, upon certain other payments to be made, was to receive a deed to the land *east* of the right of way, and, upon yet other payments, a deed to the land *west* of the right of way. The payments on the land west of the right of way extended to January 1, 1932. On October 26, 1922, there was a contract of sale of the land *east* of the right of way for $12,000, of which $2,-000 was cash and the balance in annual payments ending January 1, 1930. Upon payment of the first $5,000, deed was to pass. The same date (October 26, 1922), there was an option given to Steele to purchase the land *west* of the right of way. This option was open until January 1, 1931. Under the above instruments, Steele operated extensively from 1916 up to the trial below.

September 14, 1925, Carnahan made a contract to convey the entire tract to Podlesak for $750 cash and a balance to be paid at the end of three months thereafter when deed was to pass. This contract provided for cancellation of the above contract with Steele, dated February 2, 1922. December 1, 1925, the rights under this contract were assigned by Podlesak to Barr.

The present action was to annul this contract with Podlesak or, if annulment be denied, to reform it (because of mistake) by substituting the above contract of October 26, 1922, with Steele for that of February 2, 1922, which was provided for in the contract with Podlesak.

The counterclaim was to specifically enforce the Podlesak contract.

After the counterclaim had been filed, Carnahan and Foster gave a warranty deed for the entire tract to Steele. A mortgage was given by Steele and his wife to the Harbine Bank to secure $3,170.55. The supplemental counterclaim covered Steele, his wife, and the bank and sought annulment of the above deed and mortgage.

The above is the barest outline of the above instruments, but is sufficient for disposal of this appeal. The parties argue issues relating to the effect and validity of the above contracts of February 2, 1922, October 26, 1922, and September 14, 1925. Such argument seems beside the mark here. The court handed down no opinion. However, the view of the court is revealed in the decree. The decree dismissed the complaint. That was an adjudication that the contract with Podlesak of September 14, 1925, should be neither annulled nor reformed. Also, the decree dismissed the supplemental counterclaim. That was an adjudication that the deed to Steele and the mortgage by Steele to the bank should not be annulled. Also, the decree dismissed the counterclaim "without prejudice to any action at law that defendant James G. Barr may have against plaintiffs." As to Barr, the only appellant, the adverse action of the court amounted merely to a denial of equitable relief. The main equitable relief sought by Barr against plaintiffs was specific performance of the contract with Podlesak of September 14, 1925. The court remitted Barr to an action at law for damages. Obviously, the court did not adjudicate the Podlesak contract to be unenforceable or the decree would not have been without prejudice to a law action thereon against plaintiffs. Clearly, the court decided that grounds were shown why that contract should not be specifically enforced in equity. Therefore, the first inquiry on this appeal must be whether such grounds existed. If they did, we are not called to go further and determine any issue concerning the validity of that contract, because the trial court has not declared it invalid and plaintiffs are not appealing. As said for this court by Judge Lewis in Gabrielson v. Hogan, 298 F. 722, 724:

"The principal question here is whether the court was right in withholding from Gabrielson the equitable relief which he sought. We do not doubt the validity of the contract. Hogans and Quinn are clearly bound by it. Their defense of fraud was not made out. They present no facts that would sustain a decree relieving them. But the fact that they are bound and liable to Gabrielson for the breach does not determine the character of relief that he may have, whether equitable or legal."

The Supreme Court used language precisely fitting the present case, as follows: "A court of chancery will often refuse to enforce a contract, specifically, when it would also refuse to annul it." Jackson v. Ashton, 11 Pet. 229, 248, 9 L. Ed. 698.

"The jurisdiction of a court of equity to decree the specific performance of contracts, is not a matter of right in the parties to be demanded ex debito justitiæ, but applications invoking this power of the court are addressed to its sound and reasonable discretion, and are to be granted or rejected according to the circumstances of each case." 36 Cyc. 548. This rule is well established and is

declared in Nickerson v. Nickerson, 127 U. S. 668, 675, 8 S. Ct. 1355, 32 L. Ed. 314; Pope Mfg. Co. v. Gormully, 144 U. S. 224, 236, 237, 12 S. Ct. 632, 36 L. Ed. 414; Gabrielson v. Hogan (C. C. A.) 298 F. 722, 724; Shubert v. Woodward, 167 F. 47, 54 (this court), as well as by many cases in this and other circuits. One well-recognized situation justifying denial of this equitable remedy is the hardship it would cause. As said in Willard v. Tayloe, 8 Wall. 557, 567, 19 L. Ed. 501:

"No positive rule can be laid down by which the action of the court can be determined in all cases. In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice; and that it will be withheld when, from a like view, it appears that it will produce hardship or injustice to either of the parties. It is not sufficient, as shown by the cases cited, to call forth the equitable interposition of the court, that the legal obligation under the contract to do the specific thing desired may be perfect. It must also appear that the specific enforcement will work no hardship or injustice, for if that result would follow, the court will leave the parties to their remedies at law, unless the granting of the specific relief can be accompanied with conditions which will obviate that result."

To grant specific performance here would not merely affect Carnahan and Foster, but also Steele. Steele had been operating the gravel deposit for nine years before the Podlesak contract. Shortly before any negotiations between Podlesak and Carnahan about buying land, Podlesak had visited the pit and had talked with Steele about buying gravel from Steele. Podlesak knew Steele was operating the gravel deposit. He tried to lease from Steele and later tried to get gravel on a royalty basis from Steele. Steele first told him that he owned the land. Later, he declined an offer of royalty for the stated reason that he had a contract to buy the land and was making payments from the gravel shipped on a sort of royalty basis and that the royalty offered by Podlesak was not enough to keep up the payments. One of the Steele contracts (February 2, 1922) was of record. The other sales contract and the option contract (both of October 26, 1922) were not of record. Very soon after the above negotiations with Steele, Podlesak sought out Carnahan, and after some negotiations, the contract of September 14, 1925, resulted. The existence of the Steele contract for sale (February 2, 1922) was discussed between Carnahan and Podlesak and their counsel. Carnahan thought it was annulled be-

cause payments had not been kept up. Steele had paid $500 down and a further $2,000 in the manner provided in that contract. It was agreed that this Steele contract must be gotten out of the way and Podlesak (in the contract of September 14, 1925) assumed the burden of such litigation. This took form in an action by Carnahan against Steele, which was, later on, dismissed at costs of plaintiff. Steele had developed the tract by putting in two spur sidings from the railroad, by running an electric line out to and into the property, by sinking two industrial wells, and erecting a shop, a barge and a tipple. Steele testified that Carnahan had accorded him an extension of time for further payments on his contracts.

We think the above facts, showing the injury (if not injustice also) to Steele through specifically enforcing the Podlesak contract, were ample to justify the court in denying such relief to Barr and remitting him to an action for damages on his contract.

The decree is affirmed.